## Hershey v. H. S. Kerbaugh, Inc., Appellant.

*Nuisance—Public nuisance—Special damage—Trespass — Obstructions in public roads—Evidence—Damages—Measure of damages.*

1. If an individual has sustained any special damage from a public nuisance beyond that which affects the public at large, whether it be direct or consequential, an action will lie against the author of the nuisance for redress. Therefore, in an action to recover damages for an obstruction of a public highway, plaintiff may recover notwithstanding the obstruction is a public nuisance, where the evidence shows that he has suffered special damages.

.2. In an action to recover damages for interfering with plaintiff's access to his land by obstructing a public road, evidence that defendant construction company, in building a railroad, had erected a bridge which had rendered impassable the road leading to plaintiff's land, is inadmissible in the absence of allegation or proof that the bridge was not on the railroad right of way, and that the railroad company had not performed or would not perform its statutory duty to construct another road.

3. In such case where the obstruction consisted in part of the abutments of a bridge located for a railroad company, not a party to the suit, upon a portion of the road, and in part of other obstructions outside of the railroad company's right of way, it was error to submit to the jury the question of the amount of damages sustained by the plaintiff, in consequence of such obstructions, where there was no evidence tending to show that the obstructions in the road could not have been removed, or the cost of such removal, or that, if they had been removed, the railroad bridge would not still have interfered with the use of the road by plaintiff.

4. In an action of trespass to recover damages for obstructing a channel of a river and a public highway, so as to interfere with plaintiff's access to his land, it was error for the court to instruct the jury that the measure of damages was the difference in the market value of the land before and after the injury complained of. The true measure of damage in such case is the cost of removing the obstruction, unless that exceeded the value of the land, and it was error for the court to exclude evidence tending to show what such cost would be.

*Assignment of action—Trespass—Punitive damages—Statement—Judgment n. o. v.*

5. A demand for exemplary or punitive damages is not assignable, but where in the trial of an action brought by an assignee of the original plaintiff, the court instructed the jury that there could be no recovery for punitive damages, the fact that such damages were claimed in the statement is not ground for entering judgment for defendant n. o. v.

*Lis pendens—Pleas in abatement—Discontinuance of former suit.*

6. In an action at law to recover damages for the obstruction of a public road, the objection that a suit in equity to restrain such obstruction is at the time pending, should be raised by plea in abatement, but even if such objection is properly raised, the plaintiff is at liberty to discontinue the former suit and reply that no such action is pending.

Argued April 20, 1913. Appeal, No. 99, Jan. T., 1913, by defendant, from judgment of C. P. Lancaster Co., Sept, T., 1905, No. 34, on verdict for plaintiffs in case of Andrew H. Hershey, Ezra M. Good, to the use of J. W. Fehl, Christian H. Nolt, and Cecilia Good, now to the use of J. W. Fehl, v. H. S. Kerbaugh, Incorporated, and the Pennsylvania Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for obstructing a river channel and a public road. Before EVANS, P. J., specially presiding.

The action was discontinued as against the Pennsylvania Railroad Company before the trial. The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $7,916.00, and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings of the trial judge, various instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant non obstante veredicto.

*W. U. Hensel* and *Frank S. Groff,* with them *Philip T. Meredith,* for appellant.

*John E. Malone,* with him *Amos E. Burkholder, John M. Groff* and *Appel & Appel,* for appellees.

OPINION BY MR. JUSTICE POTTER, July 10, 1913:

In the years 1904 and 1905 Andrew H. Hershey, Ezra M. Good and Christian H. Holt were the owners as tenants in common of several small islands in the Susquehana river, lying about 1,600 feet from the east shore, in Conestoga township, Lancaster County, and containing about 136 acres of land of which about 80 acres were subject to cultivation. There were also upon

the islands deposits of molding sand, which had commercial value. As occasion for it arose, the produce and sand were, according to the testimony, taken off by means of rafts and flat boats, through a channel running between the islands and the east bank of the river, where a public road was reached. In the latter part of the year 1904 and in 1905, the defendant, which is a corporation engaged in the contracting business, was constructing a railroad for the Pennsylvania Railroad Company along the east bank of the Susquehanna river opposite these islands. The evidence tended to show that in the process of grading and blasting the high rocky bluff, considerable amounts of rock were thrown into the channel, and into the public road, with the effect of blocking the channel and preventing its use as a means of passage to and from the islands. After bringing this suit to recover damages, all the interests of the original plaintiffs in the action were assigned and transferred to J. W. Fehl, and the suit was marked to his use upon the record. The trial resulted in a verdict for the plaintiffs in the sum of $7,916. Judgment was entered on the verdict and defendant has appealed.

The first assignment of error is to the admission in evidence of plaintiffs' offer to prove by the witness Good, one of the plaintiffs, that the channel of the river was filled up by rock, caused by the blasting of defendant, to such an extent that it could no longer be operated, and also that the defendant "placed a pier or abutment of a bridge in the public road and likewise (on) a portion of the right of way over the public road, and absolutely destroyed the same." Upon objection being made, the trial judge restricted the testimony to showing interference with the channel. Plaintiffs' counsel then put this question to the witness: "Was the public road at which you landed then, practically wiped out by the construction of this company?" By the word "construction" was meant apparently the pier or abutment of the bridge mentioned in the former offer. The bridge was

however erected by the railroad company under its power of eminent domain. The trial court admitted the question, with the qualification, "if it was off the right of way." We find neither allegation nor proof that the pier or abutment was off the right of way. Plaintiffs contended that the defendant had blocked up the roadway for some distance between the bridge and the river, but the evidence as to this is vague. It was not shown what the cost of removing this rock, so as to clear a passageway, would have been, nor was there anything to show that the railroad had not, or would not perform its statutory duty in constructing another road. In the absence of such testimony, we think the court erred in overruling the objection to this last question.

The second assignment alleges error in refusing binding instructions for defendant. The third assignment is to the refusal to enter judgment for the defendant non obstante veredicto; and the fourth assignment alleges that the court below erred in entering judgment on the verdict. These assignments are all based upon the theory that the plaintiffs had no right to recover in this action. In support of their contention in this respect, counsel for defendant advance three reasons: 1. That as the action included a demand for exemplary or punitive damages which is not assignable, and as the suit was maintained by an assignee of the original plaintiff, no recovery could be had. 2. Because there was pending at the time a suit in equity in which the original plaintiffs had applied for an injunction to restrain the defendant, and the Pennsylvania Railroad Company, from carrying on blasting operations; and, 3. Because no damages could be recovered in a private action for the result of a public nuisance. None of these reasons seem to us to be well taken. As to the first one, the trial judge ruled squarely that under the evidence no recovery could be had for punitive damages, and he so instructed the jury. As to the second reason,—the pendency of the equity suit—that is a matter which should have been

raised by plea in abatement: Gardner v. Kiehl, 182 Pa. 194. Even if the question were properly raised, it by no means follows that the pendency of the equity suit would be a bar to the present action. The plaintiffs are at liberty to discontinue the former suit at any time, and if called upon to do so, can make reply that no such action is pending: Findlay v. Keim, 62 Pa. 112.

As to the third reason, it is apparent that plaintiffs suffered some special damage from the public nuisance of which complaint was made, beyond that which affected the public at large; and because of the special injury suffered, they may recover damages. In Penna. & Ohio Canal Co. v. Graham, 63 Pa. 290, Mr. Justice Sharswood said (p. 296): "It has been settled law from the year books downward, if a party has sustained any special damage from a public nuisance beyond that which affects the public at large, whether it be direct or consequential, an action will lie against the author of the nuisance, for redress." As the evidence tended to show that the owners of the islands in question suffered some special damage, they were entitled to maintain an action therefor, and the court below could not therefore have entered judgment for defendant. Nor would it have been proper for him to have confined the recovery to a nominal sum. The jury were instructed that they might find nominal damages or a greater amount, in accordance as they should find the facts.

In the eighth assignment it is alleged that the court below erred in affirming plaintiffs' second point for charge, which permitted the jury to award damages for obstructing a public road outside the right of way of the railroad company. We do not find in the record any evidence tending to show that the obstructions in the road could not have been removed, nor any evidence as to what the cost of such removal would have been. Nor was it shown that if they had been removed, the railroad bridge would not still have interfered with the use of the road by plaintiffs. If the obstructions could have been

removed at reasonable cost, obviously that amount would
have been the proper measure of damages, in so far as
that item was concerned. And if the obstructions were
due in part to the act of the railroad company in lo-
cating the abutments of its bridge at that point, the re-
sponsibility for that act would be upon the railroad
company, and not upon the defendant. We are not able
to find in the record evidence from which the amount of
damages due to the obstructions of the road could have
been ascertained by the jury. We think, therefore, that
the trial judge erred in permitting them to include in the
verdict anything for this item.

In affirming plaintiffs' third point of which complaint
is made in the ninth assignment of error, and in that
part of the general charge which is set forth in the tenth
assignment, the trial judge instructed the jury that the
measure of damages was the difference between the
market value of the land before the trespass was com-
mitted, and its market value afterwards. This is the
correct rule in the case of a taking under the power of
eminent domain, but that was not this case. "Where
nothing is taken, but an injurious trespass is alleged, the
question is, what will be the cost of restoring the thing
injured to its former condition? If the cost of restora-
tion will equal or exceed the value of the thing injured,
then the value becomes the measure of the plaintiffs
damages": Lentz v. Carnegie, 145 Pa. 612 (627). It is
true that the trial judge, after instructing the jury that
the measure of damages would be the difference in the
market value of the islands before and after the injury
complained of, went on to say that if the islands were
but slightly injured, not permanently or to the full ex-
tent of their market value, the measure of damages
would be the cost of restoring the property, the channel,
the buildings and the land, to the same condition as they
were in before defendant commenced operations. We
can hardly regard what was said in this connection as
an adequate statement of the rule, or as sufficient to

cure the erroneous instructions as to the difference in market value already given.

Evidence as to the cost of removing the rocks from the channel is entirely lacking. An offer was made to show by the witness Shaw what it would cost per yard to remove the rock from the channel, and what the cost of restoring the channel to its original condition would be. These offers were excluded, when they should have been admitted; for they would have yielded the necessary information to enable the court to apply the proper measure of damages. Why counsel for defendant should have objected to these offers, is not apparent. They cannot now with very good grace complain of the trial judge for sustaining their objections, even though he erred in so doing. The result was to leave the record barren of evidence as to the cost of abating the nuisance. Yet this information was essential, as it would fix the measure of damages unless the cost of making good the injury would exceed the value of the property injured, in which case the value of the property at the time would become the measure of damages. This is in accordance with the clear rule of our cases: Lentz v. Carnegie, supra; Robb v. Carnegie, 145 Pa. 324; Eshleman v. Martic Township, 152 Pa. 68; Lucot v. Rodgers, 159 Pa. 58. No part of the land was here taken. The interference of which complaint was made was only with the river channel at one side of the islands, and with the roadway on the shore. Why access by flat boats or rafts to other points on the river, either up or down stream, could not have been had, did not appear. It may be from the character of the current or for some other reason, that connection with the shore at any other point than the one in question was impossible. But the verdict of $7,916 for damages to land left intact, which was assessed at a total valuation of only $800, seems to indicate that the jury could have had no clear or proper standard in mind by which to measure the damages.

The first, eighth, ninth and tenth assignments of error are sustained, and the judgment is reversed with a venire facias de novo.